**Ernest F. PAYNE, Jr., et al., Plaintiffs,**

v.

**A.O. SMITH CORP., et al., Defendants.**

**No. C–3–81–049.**

United States District Court,
S.D. Ohio, W.D.

April 8, 1983.

Anthony B. Pennington, Springfield, Ohio, Stanley E. Karon, St. Paul, Minn., for plaintiffs.

Daniel R. Freytag, Robert E. Frost, Columbus, Ohio, Peter K. Graves, Jr., Dayton, Ohio, for defendants.

## DECISION AND ENTRY OVERRULING DEFENDANTS' MOTION TO BIFURCATE TRIAL

RICE, District Judge.

In this action, Plaintiffs bring suit against Defendants for injuries resulting from an exploding water heater, based on theories of negligence, breach of warranty, and strict liability in tort. Named as Defendants are A.O. Smith Corp., manufacturer of gas water heaters, the White-Rodgers Division of Emerson Electric Co., and Emerson Electric Co., manufacturers of gas control mechanisms used on heaters. Currently pending before the Court is Defendants' motion (doc. # 18) to bifurcate the

trial, pursuant to Fed.R.Civ.P. 42(b),[1] and hold a preliminary trial on the issue of whether the gas control knob, on the water heater in question, was in a defective condition when the explosion occurred. This motion has been exhaustively briefed by Plaintiffs (docs. # 26, 67, 69 & 76) and Defendants (docs. # 18, 38, 40, 66, 68, 70, & 71), and while the issues are difficult ones, the Court holds that, for the following reasons, said motion is not well-taken and, accordingly, overrules same.

## I. STANDARDS FOR SEPARATE TRIALS

■■■ Bifurcation, or separation, pursuant to Rule 42(b), of issues in a complaint, with sequential trials thereon, is a matter committed to the sound discretion of the trial judge. *In Re Beverly Hills Fire Litigation,* 695 F.2d 207, 216 (6th Cir.1982) (*Beverly Hills*) *petition for cert. filed on other grounds,* 51 U.S.L.W. 3704 (U.S. March 21, 1983); *Kosters v. Seven-Up Co.,* 595 F.2d 347, 356 (6th Cir.1979). The factors to be balanced against the convenience and economy of one trial include the complexity of legal theories and factual proof, the risk of jury confusion, and whether the advanced disposition of issues in the first trial will dispose of or simplify the issues to be raised in the second trial. *Beverly Hills, supra,* 695 F.2d at 216; *Baxter Travenol Laboratories, Inc. v. LeMay,* 536 F.Supp. 247, 251 (S.D.Ohio 1982).

Broadly speaking, Defendants seek an initial trial on the issue of "causation," that is, the precise cause of the explosion in question. More specifically, Defendants propose that, at the first trial, the finder of fact decide whether or not the spline on the knob of the gas control was in a defective condition when the explosion occurred. Docs. # 68, pp. 2–3; # 71, p. 2.[2] Defendants argue that there is considerable evidence that the spline was *not* in such a condition, and that a leak from a gas stove in Plaintiff's house actually caused the explosion. Moreover, Defendants contend that such a procedure, if it produces a verdict in their favor, would save weeks of trial time on other issues. Finally, this procedure would eliminate the need for the jury to consider potentially prejudicial evidence of *other* similar accidents, Defendants arguing that such evidence is not admissible to prove causation and, at best, would only go to indicate that Defendants were on notice that similar accidents had occurred (to be considered, if at all, at the second trial).

In contrast, Plaintiffs vigorously argue that there is no "substantial evidence" that a stove leak, rather than a gas control leak, caused the explosion. More importantly, they contend that, under recent case law, evidence of prior, similar accidents *is* relevant on the issue of causation. Given that conclusion, Plaintiffs argue that considerable evidence would apply to *both* sequential trials, thus negating the potential savings of trial time posited by Defendants. Finally, Plaintiffs state that the bifurcation proposed by Defendants would require the jury to decide the "causation" question in a "clinical, sterile atmosphere," and would, as

---

**1.** Separate Trials. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States. Fed.R.Civ.P. 42(b).

**2.** Plaintiffs observe that this statement of the issue for the initial trial differs from that initially proposed by Defendants, namely, a bifurcation between punitive damages and all other issues. Doc. # 18. They later proposed bifurcation between "causation" and all other issues. Docs. # 38 & 40. On the other hand, Defendants rightly contend that Plaintiffs' positions have not been a model of consistency. For example, Plaintiffs originally proposed that the evidence of other accidents would only be produced to demonstrate that Defendants were on notice of claims of defect. Doc. # 25, p. 3. Now, of course, as discussed in text *infra,* Plaintiffs seek to introduce such evidence on the issues of causation and product defect, as well.

a practical matter, make it almost impossible for them to present their case.

The foregoing summary amply demonstrates that the parties agree on virtually nothing regarding bifurcation. However, they do seem to agree that however this Court rules on Plaintiffs' efforts to introduce evidence of prior accidents, on the issue of causation, will aid in resolving the bifurcation question. It is to that issue that the Court now turns.

## II. RELEVANCE OF PAST, SIMILAR ACCIDENTS ON ISSUES OF CAUSATION, NEGLIGENCE AND NOTICE

All the parties seem to agree that evidence of past, similar accidents may be relevant to the issue of whether or not Defendants were on notice that such accidents occurred with their products. This evidence would, presumably, be introduced, *inter alia*, to support imposition of punitive damages by showing "actual malice," through a manufacturer's indifference to the probability that a product might expose consumers to unreasonable risks of harm. *See Moran v. Johns-Manville Sales Corp.*, 691 F.2d 811, 815–16 (6th Cir.1982) (discussing Ohio law).

The more difficult question is whether such evidence is also "relevant", as that term is used in Fed.R.Evid. 401, to the issues of the cause of the accident in question, and the negligence (if any) of the Defendants in manufacturing and assembling Plaintiffs' water heater.

The parties have expounded at length on this issue. Recently, Judge Weinstein and Professor Berger summarized the state of the law in this area:

> Evidence of prior or subsequent similar accidents is frequently offered by plaintiffs in personal injury actions as relevant to a variety of issues, such as for instance to show the defendant's notice, magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation.

> Courts frequently state without qualification that the relevancy of such accidents depends on "whether the conditions operating to produce the prior failures were substantially similar to the occurrence in question" and whether there was a close proximity in time of the accidents to each other. Actually the requisite similarity and proximity will vary depending on what the other accident is designed to prove. If dangerousness is the issue, a high degree of similarity will be essential. On the other hand if the accident is offered to prove notice, a lack of exact similarity of conditions will not cause exclusion provided the accident was of a kind which should have served to warn the defendant. Of course, a greater degree of similarity and proximity will usually enhance the probative value of the evidence.

1 J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶ 401[10] at 401–53–54 (1982 ed.) (footnotes omitted). *See also,* C. McCormick, *Evidence,* § 200 (E. Cleary ed. 1972); Annot., 42 A.L.R.3d 780 (1972 & 1982 Supp.).

Weinstein and Berger cited numerous federal cases, most of them recent, in support of their summary. *See, e.g., Ramos v. Liberty Mutual Ins. Co.*, 615 F.2d 334, 338–39 (5th Cir.1980) (citing cases), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 921, 66 L.Ed.2d 840 (1981). *See also Wolf v. Proctor & Gamble Co.*, 555 F.Supp. 613, 621 (D.N.J.1982). This authority is simply not aberrational, as Defendant A.O. Smith contends. Moreover, the use of evidence of prior, similar accidents has been implicitly or explicitly sanctioned by courts within this Circuit. *See Beverly Hills, supra,* 695 F.2d at 218 (certain documents, though ultimately excluded pursuant to Fed.R.Evid. 403, were relevant to the issue of causation, in that they referred not "only to the knowledge of the defendants but also the propensity of aluminum to cause fires ...."); *Rimer v. Rockwell International Corp.*, 641 F.2d 450, 456 (6th Cir.1981) (evidence of prior aircraft accidents regarding similar aircraft admissible on issue of design defect); *Stoler v. Penn Central Transp. Co.*, 583 F.2d 896, 898

(6th Cir.1978) (evidence of prior accidents at railroad crossing admissible to show danger of crossing and notice to defendants); *Rhodes v. Michelin Tire Corp.,* 542 F.Supp. 60 (E.D.Ky.1982) (*Rhodes*) (evidence of accidents under "similar circumstances" relevant to issues of causation and design defect).

■ As suggested by the *Beverly Hills* court, 695 F.2d at 217, these holdings are nothing more than application of Fed.R. Evid. 401, which defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The occurrence, or non-occurrence, of accidents under *similar conditions* would tend to make it more, or less, probable that a particular product caused an accident or was defectively designed. *Rhodes, supra,* 542 F.Supp. at 62. Even if technically relevant under Rule 401, such evidence may, in the Court's discretion, be excluded under Fed.R. Evid. 403, if its probative value is substantially outweighed by the dangers of confusion, undue prejudice, and jury confusion. *Beverly Hills, supra,* 695 F.2d at 217–18. As Weinstein and Berger note, the degree of similarity required to admit such evidence will vary, depending on the issue to which the evidence is directed. With regard to the issue of causation, most courts have stated the prior accident(s) must be "substantially similar" to the accident in question in order to be relevant. *Ramos v.*

*Liberty Mutual Ins. Co., supra,* 615 F.2d at 339; *Wolf v. Proctor & Gamble Co., supra,* 555 F.Supp. at 621; *Rhodes, supra,* 542 F.Supp. at 62.[3]

■ Applying these principles to the present case reveals that evidence of *prior* accidents, similar to that which occurred to the Plaintiffs, *may* be relevant to the issue of what actually caused the explosion. Apparently, Plaintiffs intend to introduce evidence, gleaned primarily from depositions[4] taken in prior products liability cases (and exhibits attached thereto), involving the same defendants, to show that explosions occurred under identical or similar circumstances. Such evidence could be relevant to the issue of causation, in the sense that it would make it more likely than not that the gas heater exploded as Plaintiffs claim it did, as opposed to another source or cause of the explosion. It is true, as Defendant A.O. Smith argues, that most of the prior cases cited above apparently involved the issue of *how* a certain product caused an accident, rather than whether or not one product or another was the cause. Yet this is not universally true; for example, in the causation phase of the *Beverly Hills* bifurcated trial, the jury considered whether a fire developed on "old technology" aluminum wiring *or* copper wiring. 695 F.2d at 210–11 & 217. In any event, Defendant's distinction appears to make little difference: evidence of prior, similar accidents could be relevant to determining whether it was more likely than not that one product or another caused an accident.

**3.** Defendants' reliance on *Olin-Mathieson Chemical Corp. v. Allis-Chalmers Mfg. Co.,* 438 F.2d 833, 838 (6th Cir.1971), wherein the Sixth Circuit stated that "[i]t has long been held that evidence of other occurrences is inadmissible as evidence of the cause of a specific occurrence," is misplaced. The decision came prior to the promulgation of the Federal Rules of Evidence in 1975, and apparently interpreted Tennessee law. As the *Olin-Mathieson* court itself observed, prior to the adoption of the federal rules, federal courts applied state evidentiary law pursuant to (former) Fed.R.Civ.P. 43(a). *See* 19 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure,* § 4512 at 190–91 (1982). There is no question that the Federal Rules of Evidence apply to this diversity action, *Rhodes, supra,* 542 F.Supp. at 61 & n. 1,

and the recent case law, summarized above, relied on the federal rules. For these reasons, the *Rhodes* court recently refused to follow *Olin-Mathieson. Id.* at 63 n. 11. This Court agrees with the *Rhodes* decision.

**4.** The Court previously held that, as a general rule, Plaintiffs could use such depositions at trial, once same were properly edited. Doc. # 72, pp. 1–3. At that time, the Court admonished Plaintiffs to delete "reference to *other* cases or accidents . . . , unless *absolutely* necessary to establish liability and/or damages." *Id.* at 3 (emphasis in original). Those concerns are still viable and are consistent with the Court's ruling herein.

The introduction of such evidence will not necessarily lead to a series of "mini-trials" on the circumstances of prior accidents, as Defendants contend. Plaintiffs will simply need to convince the Court, before presentation of evidence to the jury, that the prior accidents were "substantially similar" to the circumstances surrounding the explosion at the Paynes' house. Even if this hurdle is surmounted, the Court may decide to exclude such evidence (at least on the causation issue), in whole or in part, under Rule 403 if same is confusing, unduly prejudicial, and the like. These determinations are, of course, difficult or impossible to make outside of the context of the presentation of related evidence to the jury; they are equally difficult to make, as a matter of law, through the written materials submitted with a motion to bifurcate a trial. Likewise, a separate trial on causation will not necessarily aid in determining whether the prior accidents were "substantially similar" to the Paynes' accident, as Defendant Emerson Electric argues. Doc. # 71, p. 6 & n. 2. At such an initial trial, the jury would decide whether the spline on the gas knob was in a defective condition when the explosion occurred. Yet in making that decision, as Defendant posits, the jury will be denied potentially relevant evidence concerning past, similar accidents. The Court is confident that, with the aid of counsel, *it* can determine whether the past accidents were "substantially similar".

Thus, with the caveats noted above, Plaintiffs may seek to introduce evidence of prior, similar accidents on the issue of causation (as well as other relevant issues). This holding in no way unfairly limits Defendants' theory of the case; they may still argue to the jury that the gas control knob was not in a defective condition when the explosion occurred, and that the explosion was, in fact, due to gas leakage from a stove, not the heater. Supervision by the Court, and the use of appropriate limiting instructions, Fed.R.Evid. 105; *Beverly Hills, supra,* 695 F.2d at 218, and appropriate interrogatories in the jury instructions, will prevent the prior accident evidence from prejudicing the Defendants.

## III. OTHER CONSIDERATIONS

Having decided that evidence of prior, similar accidents *may* be relevant to the issue of causation, the other considerations advanced by the parties now either argue against bifurcation, or do not particularly weigh in the balance one way or the other on the issue. For example, the likelihood that prior act evidence, in whole or in part, will come in on the issue of causation makes it highly unlikely that time will be saved in bifurcating the trial. In other words, if the trial is bifurcated as Defendants suggest, it seems likely that depositions would need to be reread, and other evidence presented in *both* phases of the trial.

On the other hand, the parties have vigorously argued that either there is ample evidence or no evidence that a leak from a gas stove caused the explosion in question. This factual dispute is clearly one for the jury to resolve at trial, whether same is bifurcated or not. Similarly, it seems unlikely that, even if the trial were bifurcated, the "causation" issue would be presented in a "clinical, sterile atmosphere."

Nevertheless, two major considerations support the Court's conclusion that bifurcation of this trial is not appropriate. First, as outlined above, the likelihood that evidence of prior, similar accidents will be relevant to causation, notice, and other issues makes it equally likely that bifurcation, as suggested by Defendants, will extend the time of trial, rather than shorten it. Second, despite the somewhat voluminous evidence being assembled by counsel,[7] the Court is not convinced, at least at this stage of the proceedings, that this case is of sufficient complexity (such as the *Beverly Hills* trial) that a bifurcation, along the lines suggested by Defendants, will save time in the long run to the litigants, counsel, or the Court.

## IV. CONCLUSION

The Sixth Circuit in the *Beverly Hills* case sanctioned the use of bifurcation of a trial between the issue of causation, and all

other issues. 695 F.2d at 216–18. While that procedure is available to this Court, it is not appropriate to this case, for the above stated reasons. Accordingly, Defendants' motion to bifurcate this trial is overruled.