No. 98-555

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 322

297 Mont. 307

992 P.2d 1271

BETTY H. KISSOCK,

Plaintiff and Appellant,

v.

BUTTE CONVALESCENT CENTER,

Defendant and Respondent.

APPEAL FROM: District Court of the Second Judicial District,

In and for the County of Butte-Silver Bow,

The Honorable James E. Purcell, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Wade J. Dahood, Michael D. McLean, Knight, Dahood, McLean & Everett, Anaconda, Montana

For Respondent:

Gary L. Walton, Lee Bruner, Poore, Roth & Robinson, Butte, Montana

Submitted on Briefs: July 1, 1999

Decided: December 22, 1999

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

1. ¶On December 25, 1994, Betty H. Kissock (Kissock) suffered a slip and fall accident in the parking lot of the Butte Convalescent Center (BCC) and sustained injuries to her right shoulder. Kissock filed a Complaint and Demand for Jury Trial in the Second Judicial District Court, Silver Bow County, alleging that BCC had failed to exercise ordinary care in maintaining its parking area and seeking damages from BCC for her injuries. BCC subsequently filed several Motions in Limine seeking to exclude certain evidence from trial, all of which were granted by the District Court. Ultimately, the jury returned a verdict in favor of BCC. Kissock then filed a Motion for Judgment Notwithstanding the Verdict, challenging the court's prior evidentiary rulings, which was denied by the District Court. Kissock now appeals to this Court. We reverse and remand for a new trial.

2. ¶The dispositive issue on appeal is whether the District Court abused its discretion in ruling that a similar accident on BCC's premises that occurred a few days prior to Kissock's fall was too remote in both time and location to be relevant and admissible

at trial.

## Factual and Procedural Background

1. ¶During the first two weeks of December of 1994, Butte experienced a series of snowstorms. The last of these storms occurred on December 19, 1994, and was followed by a warming trend which resulted in snow and ice melting during the day and freezing at night. This pattern of freezing and thawing continued for several days.

2. ¶On December 25, 1994, Kissock and her daughter drove to the BCC facility to spend some time with Mr. Kissock who was a patient. BCC knew that Christmas Day would be the busiest visitor day of the year. Upon arriving around 4:30 p.m., Kissock parked her vehicle in the parking area near the front entrance of BCC. She opened the door to her car, stepped out, and suffered a traumatic fall on some black ice on the parking lot's surface. Kissock's body struck the pavement, injuring her right shoulder.

3. ¶Kissock's daughter rushed into BCC to summon aid. Two nurses inside BCC grabbed a bucket of sand and a gurney, then left to help Kissock. Kissock's daughter was of the opinion that the parking lot was so slippery that it would have been impossible to rescue her mother unless the area was sanded. Some other staff members of BCC also came outside and, with their assistance, Kissock was brought into the facility. After Kissock's fall, BCC staff re-sanded the parking lot.

4. ¶Because Kissock was suffering from tremendous pain, she was taken to the St. James Community Hospital's Emergency Room. She underwent an examination and x-rays, was given some pain pills, and then discharged home. Approximately one month after the accident, Kissock was diagnosed with a complete rupture of the rotator cuff of her right shoulder. Subsequently, Kissock underwent two operations in an attempt to alleviate her pain. Even after these surgeries, the condition of Kissock's shoulder has prevented her from leading a normal life.

5. ¶At approximately 11:00 a.m. on December 21, 1994, Judy O'Boyle (O'Boyle), a certified nurse's aid who worked for BCC, slipped and fell on the sidewalk outside the BCC facility. Before trial, BCC requested that the District Court grant a motion in limine "prohibiting [Kissock], her witnesses, attorneys or anyone acting on her behalf from mentioning, suggesting or in any way conveying to the jury in this case that Judy O'Boyle fell several days prior to the incident involving [Kissock]."

6. ¶The District Court granted BCC's motion in limine, relying on the "remoteness rule" to exclude evidence of O'Boyle's fall at trial. The court reasoned:

The remoteness rule excludes evidence when because of distance in time or space its probative value is outweighed by its prejudicial effect. Judy O'Boyle's fall would have to have occurred under the same or similar conditions to be relevant. . . . [Kissock] gave no indication that it happened even near to the same time of day as [Kissock's] fall. The Court finds it too prejudicial to the issue of [Kissock's] slip and fall.

## Discussion

1. ¶Did the District Court abuse its discretion in ruling that O'Boyle's prior slip and fall accident was too remote in both time and location to be relevant and admissible at trial?

2. ¶A district court has broad discretion to determine whether or not evidence is relevant and admissible. Simmons Oil Corp. v. Wells Fargo Bank, 1998 MT 129, ¶ 19, 289 Mont. 119, ¶ 19, 960 P.2d 291, ¶ 19. The authority to grant or deny a motion in limine being part of the inherent power of a court to admit or exclude evidence as necessary to afford a fair trial, we will not overturn a district court's grant of a motion in limine absent an abuse of discretion. City of Helena v. Lewis (1993), 260 Mont. 421, 425-26, 860 P.2d 698, 700.

3. ¶As a general rule, all relevant evidence is admissible. Rule 402, M.R.Evid. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, M.R. Evid. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Rule 403, M.R.Evid. A frequent application of Rule 403, M.R.Evid., commonly referred to as the "remoteness rule," is the exclusion of evidence which, though otherwise relevant, is too remote in time or space from the proposition being proved to be admissible without the dangers of unfairness, confusion, and undue expenditure of time on collateral issues. See Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 401.04(2)(e)(ii), at 401-29 (Joseph M. McLaughlin ed., 2d ed. 1999); see also Preston v. McDonnell (1983), 203 Mont. 64, 67, 659 P.2d 276, 277.

4. ¶Kissock contends that the District Court abused its discretion in granting BCC's motion in limine to exclude evidence of O'Boyle's prior slip and fall accident. Kissock maintains that O'Boyle's accident, having occurred under substantially similar conditions only four days prior to Kissock's accident, is relevant and admissible to demonstrate BCC's notice and knowledge of the dangerously icy

conditions that existed at the time of Kissock's fall. In opposition, BCC argues that Kissock failed to show that the two accidents occurred under substantially similar circumstances or that the instrument which caused Kissock's injury was in substantially the same condition as when O'Boyle's accident occurred. Since Kissock failed to establish the factual identity of the two accidents, BCC asserts that the District Court acted well within its discretion in excluding the irrelevant and prejudicial evidence of O'Boyle's prior accident.

5. ¶The source of BCC's contention is our discussion in Runkle v. Burlington Northern (1980), 188 Mont. 286, 613 P.2d 982, in which we said of the remoteness rule as it pertains to evidence of prior accidents:

"One of the principal qualifications of the rule rendering evidence of prior accidents admissible for certain purposes is that it must appear, or at least the preliminary proof must tend to show, that the former accidents happened under circumstances substantially the same or similar to those existing at the time of the injury for which suit is brought, and that the instrument or agency which caused the injury was in substantially the same condition at the time such other accidents occurred as it was at the time of the accident in question."

Runkle, 188 Mont. at 292, 613 P.2d at 986 -87 (quoting 29 Am.Jur. 2d Evidence § 305, at 351).

1. ¶Because Kissock failed to show that the two accidents occurred "even near to the same time of day," the District Court found O'Boyle's prior accident to be dissimilar to Kissock's fall primarily on temporal grounds and, thus, excluded the evidence as unduly prejudicial. While we continue to acknowledge that district courts have wide-ranging discretion to balance probative value against prejudicial effect in determining questions of admissibility, we conclude, as explained below, that the District Court abused its discretion in finding that the two accidents were not substantially similar.

1. ¶Evidence of prior accidents, although inadmissible to prove negligence, may be admitted for other purposes such as to show (1) the existence of a particular physical condition or defect, (2) the dangerousness of the condition or defect, (3) the possibility that the condition or defect might cause an accident or injury of the type alleged, (4) cause in fact, and (5) knowledge or notice of the condition or defect. See Christopher B. Mueller & Laird C. Kirkpatrick, Modern Evidence: Doctrine and

Practice § 4.8, at 281-82 (1995); McCormick on Evidence § 200, at 844-47 (John William Strong ed., 4th ed. 1992). In Montana, we have recognized that although evidence of prior accidents is not admissible for the purpose of proving negligence, such evidence is nevertheless admissible to show the existence of a danger or defect and notice or knowledge thereof. Runkle, 188 Mont. at 292, 613 P.2d at 986; Schmidt v. Washington Contractors Group, Inc., 1998 MT 194, ¶ 25, 290 Mont. 276, ¶ 25, 964 P.2d 34, ¶ 25.

2. ¶To guard against prejudice, this Court has required that the prior accident be "substantially similar to" and "not too remote from the accident in question" in order to be relevant and admissible. Runkle, 188 Mont. at 292, 613 P.2d at 986 (citing 70 A.L.R.2d 167, 201). Evidence of prior, similar accidents can have significant probative force bearing upon the question of the reasonableness of defendant's conduct. Conversely, the rationale for excluding evidence of prior accidents that happened under dissimilar or remote circumstances is a matter of logic: as time and circumstances become less similar to the accident under consideration, the probative value of the occurrence of such prior accidents decreases, while the prejudicial value of such evidence before a jury increases.

3. ¶However, as we have recognized, "[a]ccidents need not be identical to be admissible." Tacke v. Vermeer Mfg. Co. (1986), 220 Mont. 1, 9, 713 P.2d 527, 532; see also Runkle, 188 Mont. at 292, 613 P.2d at 986 ("absolute identity of circumstances is not necessary"). Regarding the degree of identity required when offering the prior accident evidence for the sole purpose of notice or knowledge, as did Kissock, we take this opportunity to clarify that the general requirement of substantially similar circumstances as a precedent to the admission of prior accidents is "relaxed" or "less strict" when the evidence is proffered to show notice rather than dangerousness or causation. See Joy v. Bell Helicopter Textron, Inc. (D. C. Cir. 1993), 999 F.2d 549, 555; Four Corners Helicopters, Inc. v. Turbomeca (10th Cir. 1992), 979 F.2d 1434, 1440; Pau v. Yosemite Park and Curry Co. (9th Cir. 1991), 928 F.2d 880, 889; Nachtsheim v. Beech Aircraft Corp. (7th Cir. 1988), 847 F.2d 1261, 1268 n.9; Edwards v. Consolidated Rail Corp. (D.D.C. 1983), 567 F. Supp. 1087, 1105; Wolf v. Procter & Gamble Co. (D.N.J. 1982), 555 F.Supp. 613, 621.

4. ¶"If the accident is offered to prove notice, a lack of exact similarity of conditions will not preclude admission provided the accident was of a kind which should have served to warn the defendant." Weinstein & Berger, Weinstein's Federal Evidence § 401.08(2), at 401-51; see also McCormick on Evidence § 200, at 848 (noting that the similarity in circumstances may be "considerably less" when offering the

evidence to show notice of a potentially dangerous situation than when the evidence is offered for one of the other valid purposes). In proving notice, there may be dissimilarities between the accidents so long as "the differences can easily be brought out on cross-examination and understood by the jury. Such differences are said to affect the 'weight' of the evidence but not necessarily its admissibility." Mueller & Kirkpatrick, Modern Evidence § 4.8, at 283 (footnote omitted); accord Jones & Laughlin Steel Corp. v. Matherne (5th Cir. 1965), 348 F.2d 394, 400-01.

5. ¶With the foregoing principles in mind, we turn to the facts of this case. The temporal and physical circumstances surrounding the two accidents were substantially similar. We disagree with the District Court's temporal conclusion that since the accidents happened at different times of the day, they are dissimilar. At least one court has held, and we agree in this instance, that the fact that the similar accident occurs at a different time of the day goes to the weight, not the admissibility, of the evidence. See Bailey v. Southern Pac. Transp. Co. (5th Cir. 1980), 613 F.2d 1385, 1389, cert. denied, 449 U.S. 836, 101 S.Ct. 109, 66 L.Ed.2d 42 (1980).

6. ¶As to physical circumstances, we similarly disagree with BCC that the accidents occurred under substantially dissimilar circumstances because O'Boyle's 11:00 a.m. accident occurred one day after a two-week series of snowstorms and freezing temperatures, while Kissock's 4:30 p.m. accident occurred after a week of warm temperatures with conditions melting in the day and freezing at night. These minor factual distinguishments bear upon the weight of the evidence rather than its admissibility. Importantly, both slip and fall accidents occurred under winter-like conditions near the front entrance to the BCC facility. O'Boyle's fall was the kind of accident that should have served to warn BCC of the potentially dangerous conditions on its premises. Therefore, the parties should be free to argue the subtle, climatological differences between the two accidents in terms of the weight to be given the prior accident evidence, and let the jury decide whether O'Boyle's accident put BCC on notice of the slippery conditions existing on its premises and whether BCC thereafter exercised ordinary care in maintaining its parking lot. These differences can be easily brought out by BCC through testimony and cross-examination, and clearly understood by the jury.

7. ¶Likewise, the instrument that caused the injuries was substantially similar. Both accidents occurred on BCC premises just days apart. The fact that O'Boyle fell on the sidewalk, while Kissock fell in the parking lot, does not raise a substantial dissimilarity. Both the sidewalk and the parking lot are in the walking areas leading into the BCC facility, where BCC should expect visitors to travel. Nor do we agree

with BCC that the fact that O'Boyle fell on a snowpacked sidewalk, while Kissock fell on black ice in the parking lot, renders the instrument causing the injuries "completely different." Just prior to her accident, O'Boyle stated that a co-worker walking in front of her along the sidewalk warned her to " 'be careful on the ice.' " O'Boyle further stated that the condition of the sidewalk was "snowpacked [with] ice under it." After the accident, O'Boyle told BCC's head maintenance man, " 'I just fell on that ice out there that we've been telling you guys to clear.' "

8. ¶We determine that the minor spatial and temporal differences existing between the two slip and fall accidents goes to the weight of the evidence in supporting an inference that BCC had notice or knowledge of the icy conditions existing at the time of Kissock's accident. Evidence of O'Boyle's prior slip and fall accident should have been admitted for consideration by the jury for the purpose of determining whether a reasonably prudent defendant in BCC's position, having notice of prior accidents, " 'would have taken precautions against future accidents.' " Kalanick v. Burlington Northern R.R. Co. (1990), 242 Mont. 45, 52, 788 P.2d 901, 906 (quoting Young v. Illinois Cent. Gulf R.R. Co. (5th Cir. 1980), 618 F.2d 332, 339).

9. ¶We cannot say that the circumstances surrounding O'Boyle's prior accident are so remote or dissimilar from Kissock's accident that the probative value of the evidence is substantially outweighed by its unfair prejudice to BCC. Rule 403, M.R.Evid. In this regard, we note that BCC presented evidence to the jury showing that, in the days preceding Kissock's accident, it inspected the parking lot on a daily basis and heavily sanded the area on several occasions. Based on the evidence, BCC is in a position to argue that the evidence of O'Boyle's prior accident goes to show that it did, in fact, exercise ordinary caution and take reasonable precautions against the type of injury that Kissock suffered. Thus, we agree with Kissock that the jury should have been allowed to consider O'Boyle's prior accident in determining whether or not BCC exercised ordinary care in maintaining its parking lot.

10. ¶We hold that the District Court abused its discretion in excluding evidence of O'Boyle's prior slip and fall accident. Hence, we remand for a new trial.

11. ¶Reversed.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ TERRY N. TRIEWEILER

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART