JUSTICE LEAPHART
delivered the Opinion of the Court.
¶1 Leroy and Janie Tripp appeal from the judgement of the District Court. We affirm in part, reverse on the question of attorney fees, and remand for further proceedings consistent with this Opinion.
¶2 We address the following issues on appeal:
¶3 1. Whether the District Court erred in refusing to allow the Tripps’ expert to testify concerning other incidents of failure involving COMPLY.
¶4 2. Whether the District Court erred in allowing evidence concerning a settlement entered into by the third-party contractor.
¶5 3. Whether the District Court erred in allowing the expert testimony of Stephen Zylkowski concerning industry standards.
¶6 4. Whether the District Court erred in giving Jeld-Wen’s proposed jury instruction regarding negligent misrepresentation.
¶7 5. Whether the District Court erred in awarding attorney fees under the Montana Consumer Protection Act.
FACTUAL AND PROCEDURAL BACKGROUND
¶8 In 1995 the Tripps contracted with Howard Construction (Howard) to build their home. The Tripps sought a floor that did not “squeak.” They ordered plywood as the sub-flooring, but instead received a product known as COMPLY Sturd-I-Floor. COMPLY is manufactured by Oregon Strand Board, which is owned by Respondent Jeld-Wen, Inc. In installing the product, Howard utilized staples, something the manufacturers’ specifications specifically said to avoid. Also, during construction, the product was left out in the open and exposed to rain. According to the Tripps, they were reassured by JeldWen’s advertisements for COMPLY that the. use of staples and exposure to rain were acceptable because the ads indicated that COMPLY was an acceptable substitute for plywood.
¶9 When the home was finished, the Tripps moved in and found that their floor “squeaked” after all. After complaining to Jeld-Wen and unsuccessfully waiting to see if the noise abated, the Tripps filed suit against Jeld-Wen, claiming negligence, breach of warranty, and unfair or deceptive trade practices under the Montana Consumer Protection Act (MCPA). Jeld-Wen then sued Howard as a third-party plaintiff.
¶10 Before trial, the Tripps settled with Howard. Because of this the court dismissed Jeld-Wen’s suit against Howard. Evidence of the settlement was later used by Jeld-Wen to impeach the testimony of *149 Howard’s owner, who testified for the Tripps. Also before trial, JeldWen disclosed an expert witness, but then shortly before trial substituted another expert witness, Stephen Zylkowski, who until then had only been listed as a fact witness. During trial, Jeld-Wen objected to the Tripps’ expert witness, Dr. Burke, testifying to other incidents of homeowner dissatisfaction with COMPLY. The District Court sustained this objection. In addition, Jeld-Wen submitted a proposed jury instruction regarding the standard for negligent misrepresentation, a theory the Tripps had not pled in their complaint. The instruction was given over the Tripps’ objection.
¶11 The jury returned a verdict in favor of Jeld-Wen and the court entered judgment accordingly. Following that, the District Court awarded attorney fees to Jeld-Wen, in accordance with its interpretation of the MCPA. From the judgment and the award of attorney fees, the Tripps bring this appeal.
STANDARD OF REVIEW
¶12 We review a district court’s evidentiary rulings for abuse of discretion. Kiely Const., L.L.C. v. City of RedLodge, 2002 MT 241, ¶ 92, 312 Mont. 52, ¶ 92, 57 P.3d 836, ¶ 92 (citing Finstad v. W.R. Grace & Co., 2000 MT 228, ¶ 43, 301 Mont. 240, ¶ 43, 8 P.3d 778, ¶ 43). “‘The test for abuse of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice.’ ” Kiely, ¶ 92 (quoting Jarvenpaa v. Glacier Elec. Coop., Inc., 1998 MT 306, ¶ 13, 292 Mont. 118, ¶ 13, 970 P.2d 84, ¶ 13). The same standard applies when we review a discovery matter, Hawkins v. Harney, 2003 MT 58, ¶ 17, 314 Mont. 384, ¶ 17, 66 P.3d 305, ¶ 17; jury instructions, Montana Dep’t of Transp. v. Simonson, 2004 MT 60, ¶ 14, 320 Mont. 249, ¶ 14, 87 P.3d 416, ¶ 14 (citing Harwood v. Glacier Elec. Coop., Inc. (1997), 285 Mont. 481, 487, 949 P.2d 651, 655); or an award of attorney fees, Lewistown Propane Co. v. Moncur, 2002 MT 349, ¶ 19, 313 Mont. 368, ¶ 19, 61 P.3d 780, ¶ 19.
DISCUSSION ISSUE ONE
¶13 Whether the District Court erred in refusing to allow the Tripps’ expert to testify concerning other incidents of failure involving COMPLY.
¶14 At trial, the Tripps wanted their expert witness, Dr. Edwin Burke, to testify to other incidents of COMPLY failing to function properly. *150 The District Court allowed Dr. Burke to testify to experiments he had conducted on pieces of COMPLY as well as to the experience of another witness, Dean Gingerich, who had previously testified that he also had a “squeaky” COMPLY floor. However, the court did not allow Dr. Burke to speak to the experiences of other third-parties with COMPLY floors. The court agreed with Jeld-Wen that the basis for Dr. Burke’s opinion had already been given through other testimony. The court ruled that it would not allow Dr. Burke to testify to these third-parties’ experiences because under Rule 403, M.R.Evid., the ‘prejudicial effect outweigh[ed] the probative value.” The Tripps argue that the court abused its discretion, and that Dr. Burke should have been allowed to testify concerning other incidents of COMPLY failure because (1) they formed the basis for Dr. Burke’s opinion, and (2) they were admissible to demonstrate notice.
¶15 The Tripps are correct in stating that an expert witness may testify to evidence that might be otherwise inadmissible. See Rule 703, M.R.Evid. (‘If of a type reasonably relied upon by experts in the particular field in forming opinions ... the facts or data need not be admissible in evidence.”). See also Azure v. City of Billings (1979), 182 Mont. 234, 255, 596 P.2d 460, 472 (“ ‘The rationale in favor of the admissibility of expert testimony based on hearsay is that the expert is fully capable of judging for himself what is or is not a reliable basis for his opinion.’ ’’(quoting United States v. Sims (9th Cir. 1975), 514 F.2d 147, 149)). However, Rule 703, as with all rules of evidence, may collide with Rule 403, M.R.Evid. State v. Van Dyken (1990), 242 Mont. 415, 428, 791 P.2d 1350, 1358.
¶16 Rule 403 states, “Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” The Tripps wanted Dr. Burke to comment on non-witness third-parties’ experiences with COMPLY. Since such testimony might improperly induce the jury into thinking COMPLY is rampantly defective, there was a danger that it would unfairly prejudice the jury.
¶17 Under Rule 403 this danger must be weighed against the testimony’s probative value. Jeld-Wen argues that the probative value of the testimony was minimal because Dr. Burke had already given a reliable basis for his opinion. He had, in fact, already produced detailed testimony on his testing of COMPLY and was allowed to testify to the experience of homeowner Dean Gingerich. Gingerich *151 appeared as a witness and was subjected to cross-examination by JeldWen. If Dr. Burke had been allowed to testify to the experiences of other third-parties whom Jeld-Wen had not had the opportunity to cross-examine, there would have been a heightened danger that Dr. Burke’s testimony about their experiences would be treated as unrebutted substantive evidence. Furthermore, although the court specifically allowed the Tripps the opportunity to question Dr. Burke about the experiences of Dean Gingerich, the Tripps declined to do so. Having chosen not to question Dr. Burke about the experiences of witness Gingerich, the Tripps’ contention that Dr. Burke should have been allowed to testify about the experiences of third-party non-witnesses rings hollow. Therefore, with foundational testimony already in evidence, Jeld-Wen is correct in arguing that the probative value of Dr. Burke’s testimony on the experiences of non-witness third-parties would likely have been minimal. We conclude the court did not abuse its discretion.
¶18 The Tripps also argue that Dr. Burke’s testimony regarding third-party experiences with COMPLY was admissible to demonstrate that Jeld-Wen had notice of COMPLYs alleged defectiveness. This argument similarly fails. As the Tripps note in their briefs, we follow a “relaxed” standard when evidence is offered to demonstrate notice rather than liability. Kissock v. Butte Convalescent Ctr., 1999 MT 322, ¶ 17, 297 Mont. 307, ¶ 17, 992 P.2d 1271, ¶ 17. However, the standard only applies “so long as ‘the differences [between different accidents] can easily be brought out on cross-examination and understood by the jury.’ ”Kissock, ¶ 18 (citing Mueller & Kirkpatrick, Modern Evidence §4.8, at 283). Had the District Court allowed Dr. Burke to testify to the non-witness third-parties’ experiences, Jeld-Wen would have been denied the opportunity to cross-examine the third-parties as to whether their experiences with COMPLY were similar enough to constitute notice to Jeld-Wen. The opportunity to cross-examine Dr. Burke about his brief conversations with the non-witness third-parties would not allow Jeld-Wen to “easily” demonstrate any difference between the third-party experiences and the Tripps’ experience. In light of this, we conclude that the court did not abuse its discretion in excluding the testimony.
ISSUE TWO
¶19 Whether the District Court erred in allowing evidence concerning a settlement entered into by the third-party contractor.
¶20 The Tripps contend that evidence of their settlement with their *152 contractor, Howard, was improperly allowed by the District Court when Jeld-Wen cross-examined Howard’s owner. Rule 408, M.R.Evid., does not allow for evidence of settlements in order to prove or disprove liability. However, as the court below recognized, the witness was not asked about the settlement in order to prove any issues of liability, but to illustrate the bias of the witness. This is permissible under Rule 408. In addition, the Tripps argue that in inquiring into Howard’s settlement, Jeld-Wen was improperly trying to apportion liability to a person not involved in the lawsuit. See Plumb v. Fourth Judicial Dist. Court (1996), 279 Mont. 363, 379, 927 P.2d 1011, 1021. Again, since Jeld-Wen was not seeking to apportion liability, but instead seeking to show bias, the District Court did not abuse its discretion in allowing inquiry into the settlement. See Pula v. State, 2002 MT 9, ¶ 17, 308 Mont. 122, ¶ 17, 40 P.3d 364, ¶ 17 (allowing evidence of third-party negligence to show causation, not liability).
¶21 The Tripps argue in the alternative that even if it is permissible to inquire into a settlement for purposes of illustrating bias, such inquiry must be kept within the bounds of necessity. Specifically, they point to Jeld-Wen’s inquiring into the amount of the settlement. This, they continue, goes beyond merely revealing the existence of a settlement and into the specifics of the settlement itself. Contrary to this argument, however, we have held that Tt]here will be times ... when the jury should be informed of the amount of the settlement.” Azure, 182 Mont. at 247, 596 P.2d at 467. One such time was present here: The amount Howard settled for was very similar to the amount that Howard’s owner earlier had contended it would have cost to repair the floor. Because he settled at that amount, Jeld-Wen could argue that he was inconsistent when he testified to a different, much greater, repair figure. Therefore, inquiry into the amount was pertinent to the credibility of the witness and the court did not abuse its discretion by allowing the testimony.
ISSUE THREE
¶22 Whether the District Court erred in allowing the expert testimony of Stephen Zylkowski concerning industry standards.
¶23 Jeld-Wen’s witness Zylkowski testified regarding industry standards. Zylkowski was a substitute for Gregg Froman, a previously listed expert witness. Unlike Froman, Zylkowski did not have personal knowledge of the Tripp floor. Since Zylkowski was added as a witness late in the course of litigation, was only designated as an expert witness shortly before trial, and was to testify on slightly different *153 matters than Froman, the Tripps argue that the District Court should not have allowed him to testify.
¶24 The Tripps point us toward cases where we have upheld the exclusion of expert testimony on the grounds that the experts were not fully disclosed in advance of trial or that a party abused a discovery deadline. See, e.g., Seal v. Woodrows Pharmacy, 1999 MT 247, ¶ 25, 296 Mont. 197, ¶ 25, 988 P.2d 1230, ¶ 25; Rocky Mountain Enters., Inc. v. Pierce Flooring (1997), 286 Mont. 282, 299, 951 P.2d 1326, 1336-37. However, these cases do not necessarily help the Tripps’ cause because in this case the District Court allowed the expert to testify.
¶25 In this case, although Zylkowski was not disclosed as a witness until late in the litigation, he was disclosed to the Tripps six months before trial. Although his expert status was not made known until two weeks before trial, the Tripps were on notice, through the District Court’s Pre-Trial Order, that the prior witness disclosures could be supplemented at a later time. These facts are similar to Ostermiller v. Alvord (1986), where the plaintiff objected because a treating physician, although listed as a witness, had not been listed as an expert witness. 222 Mont. 208, 212, 720 P.2d 1198, 1201. Since plaintiff did not contend that he was surprised by the doctor’s testimony, we characterized his argument as ‘hyper-technical,” and affirmed the District Court. Ostermiller, 222 Mont. at 212, 720 P.2d at 1201. Given that, here, the Tripps had six months notice that Zylkowski was a witness and two weeks notice that he was an expert witness, we conclude that the District Court did not abuse its discretion.
ISSUE FOUR
¶26 Whether the District Court erred in giving Jeld-Wen’s proposed jury instruction regarding negligent misrepresentation.
¶27 The Tripps contend that the District Court abused its discretion in giving Jeld-Wen’s jury instruction (Instruction 19) detailing the elements of negligent misrepresentation. The Tripps argue that since they did not assert a claim for negligent misrepresentation, the instruction confused the jury in its consideration of the Tripps’ negligence and unfair trade practices claims.
¶28 In reviewing jury instructions, not only do we look for abuse of discretion, but ‘[t]he party assigning error ... must show prejudice in order to prevail, and prejudice will not be found if the jury instructions in their entirety state the applicable law of the case.” Christofferson v. City of Great Falls, 2003 MT 189, ¶ 9, 316 Mont. 469, ¶ 9, 74 P.3d 1021, ¶ 9 (citing Kiely, ¶ 62). It is undisputed that Instruction 19 was *154 a correct statement of law. However, it is also true that Instruction 19 was sandwiched in the middle of Instructions 17-20, and that 17, 18, and 20 speak only of'"negligence,’’not of“negligent misrepresentation.”
¶29 Jeld-Wen counters by pointing out that although the Tripps may not have pled negligent misrepresentation in their complaint, during the trial they repeatedly contended that they had relied on representations by Jeld-Wen or its supplier. The record supports JeldWen in this regard. Furthermore, the fact that the Tripps repeatedly claimed that misrepresentations led them to use the COMPLY product demonstrates that their negligence claim could also be characterized as a negligent misrepresentation claim. The Tripps did not argue at trial that Jeld-Wen negligently manufactured or transported COMPLY. Instead, their contention was that Jeld-Wen misrepresented how COMPLY stands up when installed. Therefore, "the jury instructions in their entirety state the applicable law of the case,” and we cannot conclude that the District Court abused its discretion in including an instruction for negligent misrepresentation among the more general negligence instructions. Christofferson, ¶ 9.
¶30 The Tripps also argue that Instruction 19, with its requirement of intent to deceive, confused the jury in considering the Tripps’ separate unfair trade practices claim, which has no scienter requirement. This argument has no merit. First, negligent misrepresentation does not require ‘intent to deceive” but, as Instruction 19 plainly states, intent to induce reliance on a representation without any reasonable ground to believe that it is true. In other words, it requires negligence not intent. Second, all three claims were explicitly divided into three different sets of instructions. Clearly, Instruction 19 was to be considered in the context of the negligence claim and not in the unfair trade practices claim. We conclude the District Court did not abuse its discretion.
ISSUE FIVE
¶31 Whether the District Court erred in awarding attorney fees under the Montana Consumer Protection Act.
¶32 Having successfully defended against the Tripps’ claims of unfair or deceptive trade practices under the MCPA, Jeld-Wen requested attorney fees pursuant to the Act. The MCPA states, in pertinent part, ‘In any action brought under this section, the court may award the prevailing party reasonable attorney fees incurred in prosecuting or defending the action.” Section 30-14-133(3), MCA. The District Court concluded that Jeld-Wen was thus entitled to reasonable attorney fees *155 ‘in defending the Consumer Protection aspect of the action ....”
¶33 We applied this provision in the context of a prevailing defendant in Dilleree v. Devoe (1986), 223 Mont. 47, 54, 724 P.2d 171, 175-76, where we concluded that a party does not have to win a claim brought under the MCPA, but only prevail in an action brought under the Act. We did not inquire into the separate question of what standard should be followed in making an attorney fees award to a prevailing defendant under the Act. The Tripps urge us to adopt a ‘bad faith” standard so as to not create a chilling effect on consumers bringing meritorious claims. We conclude that there is merit in the Tripps’ argument, but that we should adopt an intermediate standard between ‘bad faith” and “prevailing party.”
¶34 For guidance we look to standards utilized in awarding attorney fees under statutes very similar to the MCPA. Title VII of the Civil Rights Act of 1964 allows an award of attorney fees as follows: ‘In any action or proceeding under this title the court, in its discretion, may allow the prevailing party ... a reasonable attorney’s fee as part of the costs ....” 42 U.S.C. § 2000e-5(k) (1977). [1] The United States Supreme Court interpreted this language in the context of an award to a defendant in Christiansburg Garment Co. v. Equal Employment Opportunity Commission (1978), 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d. 648. It held that the language did not apply to plaintiffs and defendants in the same way. When awarding a plaintiff attorney fees a court is doing so “to vindicate ‘a policy that Congress considered of the highest priority’ ” and against a “violator of federal law.” Christiansburg, 434 U.S. at 418, 98 S.Ct. at 699, 54 L.Ed.2d at 655 (quoting Newman v. Piggie Park Enters. (1968), 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263, 1265). However, when awarding a defendant attorney fees, “quite different equitable considerations” are relevant. Christiansburg, 434 U.S. at 419, 98 S.Ct. at 699, 54 L.Ed.2d at 655. An example of these different considerations is “to protect defendants from burdensome litigation having no legal or factual basis.” Christiansburg, 434 U.S. at 420, 98 S.Ct. at 700, 54 L.Ed.2d at 656. Thus, although the reasons for awarding prevailing plaintiffs and prevailing defendants reasonable attorney fees are significant for each class of litigant, the reasons for granting attorney fees to a prevailing plaintiff are more compelling since they serve to further the public policy embodied in the legislation. Therefore, the standard applied to *156 plaintiffs and defendants should not be the same.
¶35 In Christiansburg the losing plaintiff asked the Court to adopt “bad faith” as the standard in awarding attorney fees to a prevailing defendant. The Court declined. It reasoned that even under the traditional American rule where parties generally are responsible for their own legal fees, courts can award attorney fees if the litigation is brought in “bad faith.” Christiansburg, 434 U.S. at 419, 98 S.Ct. at 699, 54 L.Ed.2d at 655. Therefore, “if that had been the intent of Congress, no statutory provision would have been necessary....” Christiansburg, 434 U.S. at 419, 98 S.Ct. at 699, 54 L.Ed.2d at 655. Instead, the Court adopted an intermediate standard, holding that “a district court may in its discretion award attorney’s fees to a prevailing defendant in a Title VII case upon a finding that the plaintiffs action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.” Christiansburg, 434 U.S. at 421, 98 S.Ct. at 700, 54 L.Ed.2d at 657. In addition, it cautioned that just because a plaintiff loses a case does not mean that this standard has been met.
¶36 We adopted the view of Christiansburg in interpreting the attorney fees provision of the Montana Human Rights Act (MHRA). McCann v. Trustees, Dodson School Dist. (1991), 249 Mont. 362, 364-65, 816 P.2d 435, 437. In reviewing the award of attorney fees to the defendant school district, we cited §49-2-505(4), MCA (1991) (now § 49-2-505(7), MCA), which states, ‘The prevailing party in a hearing under this section may bring an action in district court for attorneys’ fees. The court in its discretion may allow the prevailing party reasonable attorney fees.”Citing the important interests at stake-civil rights-and the manner in which the statute is enforced-lawsuits brought by private citizens-we determined that the intermediate standard of Christiansburg should apply. McCann, 249 Mont. at 364-65, 816 P.2d at 437.
¶37 The attorney fees language of § 30-14-133(3), MCA, is substantially similar to that of the MHRA. The rationales for applying the Christiansburg standard are also applicable. First, the purpose of the MCPA is “to protect the public from unfair or deceptive practices ...” Plath v. Schonrock, 2003 MT 21, ¶ 28, 314 Mont. 101, ¶ 28, 64 P.3d 984, ¶ 28. While perhaps not rising to the heights of the MHRA, this purpose is of a high legislative priority. Second, the MCPA is enforced by private litigants. Thus, the often tenuous financial position of private plaintiffs must be taken into account when deciding on a standard for awarding attorney fees. Indeed, a preference for protecting the monetary interests of plaintiffs, and not defendants, is *157 evidenced by the Act’s treble damages provision. Section 30-14-133(1), MCA. Therefore, we conclude that an award of attorney fees under the MCPA should be made under the same standard as that of the MHRA. When faced with a successful defendant, a district court should only award attorney fees “upon a finding that the plaintiffs action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.” Christiansburg, 434 U.S. at 421, 98 S.Ct. at 700, 54 L.Ed.2d at 657[2].
¶38 Because the District Court did not have the benefit of the Christiansburg standard, we affirm issues One through Four, reverse on the issue of attorney fees, and remand for further proceedings consistent with this Opinion.
JUSTICES WARNER and MORRIS concur.

 The language has been amended since Christiansburg, but it is essentially the same today.

 Other courts have applied a similar analysis in deciding whether to apply Chrstiansburg to consumer protection statutes. See Vill. of Palm Springs v. Ret. Builders (Fla. App. 1981), 396 So.2d 196, 198 (adopting Christiansburg standard for a utility rate consumer protection statute); State v. Black (Wash. 1984), 676 P.2d 963, 971 (declining to apply Christiansburg standard to a consumer protection statute when the State Attorney General brings suit because of the “powerful civil litigation resources” available to the State).