No. 98-690

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 247

296 Mont. 197

988 P.2d 1230

LaVERN SEAL, as Personal Representative of the

Estate of LaRELL SEAL, and Individually,

Plaintiff and Appellant,

v.

WOODROWS PHARMACY, a corporation formed under

the laws of the sate of Montana, or a partnership formed

under the laws of the state of Montana, and BRUCE

NELSON, individually, and as doing business under

the name of WOODROWS PHARMACY, INC., or

as a partnership or other form of business entity,

DR. J.T.L., DR. J.C.M., DR. D.B.C., And DR. D.G.H.,

Defendants and Respondents.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

Honorable Susan P. Watters, Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

Thomas S. Winsor, Winsor Law Firm, Helena, Montana

For Respondents:

John H. Maynard and Marcia Davenport, Crowley, Haughey, Hanson,

Toole and Dietrich, Helena, Montana

Submitted on Briefs: August 26, 1999

Decided: October 19, 1999

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

¶ LaVern Seal brought this action in the Thirteenth Judicial District Court, Yellowstone County, to recover damages for the wrongful death of his son, LaRell Seal, arising from the alleged negligence of Dr. D.G.H. and other defendants. All defendants except Dr. D.G.H. were dismissed by stipulation of the parties. The District Court granted summary judgment in Dr. D.G.H.'s favor based on Seal's failure to establish a standard of care through admissible expert testimony and facts deemed admitted. From this, Seal appeals. We affirm.

¶ We restate the dispositive issues as follows:

¶ 1. Did the District Court abuse its discretion when it prohibited Seal from introducing Dr. Cocozzo's expert testimony into evidence?

¶ 2. Did the District Court abuse its discretion when it found Dr. Van Orden unqualified to provide expert testimony regarding the standard of care?

¶ 3. Did the District Court err when it granted summary judgment to Dr. D.G.H. based on a fact deemed admitted by operation of Rule 36(a), M.R.Civ.P.?

¶ 4. Did the District Court erroneously consider other discovery abuses?

¶ Based on our resolution of Issues 1 and 2, we do not reach Issue 3 in this case.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ LaVern Seal ("Seal") filed a wrongful death and survivorship action and a demand for jury trial, alleging that the negligent acts or omissions of a defendant pharmacist and pharmacy, and John Does 1 through 10, were a proximate cause of the death of his 36-year old son, LaRell Seal. In his complaint, Seal alleged that between June 1988 and May 1992, LaRell received medical treatment for a back injury and was prescribed increasing amounts of narcotic pain medication and other prescription drugs. Seal further alleged that the amount of medication LaRell received was far in excess of what was ordinary, especially since the results of an autopsy revealed that LaRell's use of the medication may have caused his death.

¶ In an amended complaint, Seal named Dr. D.G.H. and three other doctors as defendants. During this case, however, Seal stipulated to a dismissal of all the

defendants with prejudice, except Dr. D.G.H. Dr. D.G.H. is a practicing anesthesiologist, certified by the American Board of Anesthesiology, who treated LaRell. Seal alleges that Dr. D.G.H. prescribed increasing amounts of narcotic pain killers to LaRell even after another doctor would not agree to do so.

¶ The procedural history of this case is important. The District Court allowed Seal until April 1, 1997, to file with the Clerk of Court and serve upon each party a list containing the names and addresses of all witnesses he expected to call as experts at trial. The District Court directed Seal to provide in his expert witness list information required by Rule 26(b)(4)(A)(i), M.R.Civ.P., including a statement of the subject matter on which each expert would testify, the substance of the facts and opinions to which each expert would testify, and a summary of the grounds for each opinion. The parties were given until July 1, 1997, to complete discovery, and trial was set for September 8, 1997.

¶ On April 1, 1997, Seal filed his expert witness list. The list included a Dr. Lamb as an expert medical witness. However, when Dr. Lamb was deposed by defense counsel, she revealed that she would not testify at the scheduled trial. Seal, therefore, withdrew Dr. Lamb as an expert witness, moved for a six-month continuance of the trial date, and asked the court to reopen the time to disclose expert witnesses. In his motion, Seal noted that Dr. Lamb's testimony was crucial to his case and that there had been numerous delays for depositions by all parties due to the scheduling conflicts of several defendants.

¶ In a new scheduling order, the District Court extended the trial date and provided Seal until March 2, 1998, to file and serve an expert witness list. The defendants were given until April 2, 1998, to do the same. All parties were given until July 1, 1998, to complete discovery, and trial was rescheduled for October 5, 1998. The District Court stated that its "schedule shall not be modified except by leave of Court, upon a showing of good cause."

¶ Seal filed his new list of expert witnesses on March 2, 1998; however, the list did not include the required Rule 26(b)(4)(A)(i), M.R.Civ.P., information. In addition, Dr. D.G.H. alleges that the list was not served on him until two days after the March 2, 1998, deadline.

¶ In response to a motion to compel the necessary information, Seal filed a

supplement to his expert witness list on April 14, 1998. Like the previous list, however, the supplement did not meet the Rule 26(b)(4)(A)(i), M.R.Civ.P., requirements. Seal apparently served additional information on June 24, 1998, but it was never filed with the District Court.

¶ Seal also failed to properly respond to Dr. D.G.H.'s discovery requests. On June 23, 1997, Dr. D.G.H. served discovery requests which were identified as "Dr. D.G.H.'s Second Discovery Requests to Plaintiff." Included in these requests were interrogatories, requests for production, and one request for admission. The request for admission stated, "Please admit neither Dr. D.G.H. nor any other Defendant caused or contributed to LaRell Seal's death." Seal concedes that he never responded to Dr. D.G.H.'s request for admission. Apparently, he also failed to respond to other requests in a timely manner.

¶ Dr. D.G.H. moved for summary judgment on the grounds that Seal could not meet his burden of proof on standard of care through admissible expert medical testimony. Dr. D.G.H. later filed a supplement to his motion, adding Seal's failure to comply with his discovery requests.

¶ Dr. D.G.H.'s motion for summary judgment was heard in June 1998 and on September 18, 1998, the District Court entered an order and memorandum in Dr. D.G.H.'s favor. The District Court sanctioned Seal, pursuant to Rule 16(f), M.R.Civ.P., by prohibiting the testimony of a proposed expert medical witness, Dr. Cocozzo, on the basis that Seal failed to file a proper Rule 26(b)(4)(A)(i), M.R.Civ.P., disclosure. The District Court also determined that another proposed expert medical witness, Dr. Van Orden, did not have the necessary qualifications to testify. As a result, the District Court entered summary judgment because Seal did not have a medical expert available to establish a standard of care and a deviation from the standard of care. Another basis for the District Court's summary judgment was Seal's failure to respond to Dr. D.G.H.'s request for admission, which was deemed admitted pursuant to Rule 36(a), M.R.Civ.P.

¶ Seal appeals.

ISSUE 1

¶ Did the District Court abuse its discretion when it prohibited Seal from

introducing Dr. Cocozzo's expert testimony into evidence?

¶ In Seal's list of expert witnesses filed on March 2, 1998, Dr. Cocozzo was included as an expert medical witness. As stated previously, however, this list did not include the required Rule 26(b)(4)(A)(i), M.R.Civ.P., information. It stated only Dr. Cocozzo's name, address and qualifications. In a supplement to his expert witness list, Seal added that "Dr. Cocozzo's position is that the standard of care for pain management was not met in this matter, and that the controlled substances prescribed by Dr. D.G.H. were excessive." This did not comply with the District Court's order and Rule 26(b)(4)(A)(i), M.R.Civ.P., either. Seal did not state the substance of the facts and opinions to which Dr. Cocozzo would testify or a summary of the grounds for Dr. Cocozzo's opinion. In addition, the supplement was not timely filed and served. Although Seal subsequently served more information about Dr. Cocozzo's proposed testimony, he did not file it with the District Court. As a result of these violations, the District Court prohibited Seal from introducing Dr. Cocozzo's expert testimony into evidence.

¶ Dr. D.G.H. takes the position that Seal's failure to file an expert witness disclosure in compliance with Rule 26(b)(4)(A)(i), M.R.Civ.P., violated the express terms of the District Court's scheduling order and therefore warrants the Rule 16(f), M.R.Civ.P., sanction the District Court imposed upon Seal.

¶ Pursuant to Rule 16(f), M.R.Civ.P., a party can be sanctioned if he or she "fails to obey a scheduling or pretrial order." In reference to Rule 16(f), M.R.Civ.P., Rule 37 (b)(2)(B), M.R.Civ.P., allows a court to "refuse[] to allow the disobedient party to support or oppose designated claims or defenses, or prohibit[] that party from introducing designated matters in evidence." We regard with favor such sanctions for failure to comply with the rules of discovery. *See McKenzie v. Scheeler* (1997), 285 Mont. 500, 506, 949 P.2d 1168, 1171-72; *Huffine v. Boylan* (1989), 239 Mont. 515, 517, 782 P.2d 77, 78 (citing *Owen v. F.A. Buttrey, Co.* (1981), 192 Mont. 274, 279-80, 627 P.2d 1233, 1236). The purpose of these sanctions is to deter parties from being unresponsive to the judicial process regardless of the intent, or lack thereof, behind such unresponsiveness. *See McKenzie*, 285 Mont. at 508, 949 P.2d at 1172.

¶ In his defense, Seal argues that notwithstanding the District Court's reference to Rule 26(b)(4)(A)(i), M.R.Civ.P., in its scheduling order, this rule places a burden on the opposing party to ask questions about an expert witness's opinion foundation

when the party is dissatisfied with the prior disclosures. In making this argument, however, Seal ignores the fact that the District Court's scheduling order required him to provide such information.

¶ Seal also defends against the Rule 16(f), M.R.Civ.P., sanction by arguing that he did not intend to cause a delay or to deny Dr. D.G.H. adequate time to prepare his case. He contends that much of the time he used to prepare his expert witness list was needed to locate Dr. Cocozzo out of state and for Dr. Cocozzo to review the available records and piece together the treatment rendered to LaRell Seal. This process, he says, was complicated by the absence of Dr. D.G.H.'s records and Dr. Cocozzo's own busy schedule. Furthermore, Seal argues that any delay he caused did not prejudice Dr. D.G.H. because Dr. D.G.H. had adequate time to depose Dr. Cocozzo or to submit interrogatories regarding Dr. Cocozzo's proposed testimony. Seal adds that the District Court never issued an order against him to compel discovery. He even attempts to demonstrate his own good faith by asserting that he paid Dr. Cocozzo's fees prior to Dr. Cocozzo reviewing the records. Based on these arguments, Seal contends that excluding Dr. Cocozzo's testimony penalized him unreasonably.

¶ Seal cites *Smith v. Butte-Silver Bow County* (1996), 276 Mont. 329, 916 P.2d 91, in which we remanded a district court's sanction of a dismissal of an action with prejudice because it was too severe a sanction for the offending party's noncompliance with Rule 26(b)(4)(A)(i), M.R.Civ.P. In *Smith*, 276 Mont. at 339-40, 916 P.2d at 97, we concluded that the extent of the consequences imposed by the district court did not relate to the extent and nature of the actual discovery abuse and the extent of the prejudice to the opposing party which resulted therefrom. Our decision in *Smith*, however, relied on the fact that the offending party provided enough information about his proposed expert testimony that the prejudice he caused to the opposing party was relatively limited. Furthermore, the district court in *Smith* stated in a previous order that the sanction for noncompliance with Rule 26, M.R.Civ.P., would be to reopen the party's expert witness depositions, not to dismiss the case. In the case *sub judice*, Seal provided less information about his proposed expert testimony and caused greater prejudice to the opposing party. Also, the District Court did not threaten a lesser sanction for his noncompliance. Thus, we distinguish our holding in *Smith* from the facts here. In the instant case, Seal failed to comply with the District Court's scheduling order despite having been given substantial time to prepare his expert witness list. In so doing, Seal caused prejudice to Dr. D.G.H. by not allowing him ample time or information to rebut Dr. Cocozzo's

opinion. Short of dismissing the case for Seal's discovery abuse, the District Court prohibited Dr. Cocozzo's testimony. We agree that this was an appropriate sanction.

¶ In cases involving a failure to comply with a scheduling order pursuant to Rule 16 (f), M.R.Civ.P., we have stated that the proper standard of review is to determine whether the district court abused its discretion. *See McKenzie*, 285 Mont. at 507, 949 P.2d at 1172. This is because the trial judge "is in the best position to know whether parties are disregarding the rights of opposing parties in the course of litigation and which sanctions for such conduct are most appropriate." *McKenzie*, 285 Mont. at 506, 949 P.2d at 1172; *Smith*, 276 Mont. at 332, 916 P.2d at 93. Here, we conclude that the District Court did not abuse its discretion.

## ISSUE 2

¶ Did the District Court err when it found Dr. Van Orden unqualified to provide expert testimony regarding the standard of care?

¶ Another witness in Seal's expert witness list was Dr. Van Orden, a psychiatrist and expert on addiction medicine. Dr. Van Orden's resume also indicates that he has substantial experience in pharmacology. However, he is not an anesthesiologist.

¶ Dr. D.G.H. contends that in order for Dr. Van Orden to give expert testimony, he must have similar qualifications as Dr. D.G.H. and be qualified to testify as to the standard of care of a board-certified anesthesiologist. In his deposition, however, Dr. Van Orden admitted that he could not testify as to this standard of care.

¶ Seal, on the other hand, argues that it is not necessary for Dr. Van Orden to be board-certified in the same area of medicine as Dr. D.G.H., especially since Dr. D.G.H. was holding himself out to be in the practice of pain management, not anesthesiology. It is Seal's position that Dr. Van Orden can testify that the prescription drugs prescribed by Dr. D.G.H. were excessive given the addictive propensity of the drugs and that evidence shows LaRell was susceptible to addictions. Seal provides a written report in which Dr. Van Orden wrote that Dr. D.G.H. "prescribed a huge increase in narcotics and engaged in reckless and redundant prescribing of controlled substances!" Furthermore, Seal contends that the credibility of Dr. Van Orden's testimony can be buttressed by the testimony of another proposed expert witness, Dr. O'Brien, a toxicologist and pharmacologist.

¶ Nonetheless, the District Court concluded that Dr. Van Orden did not demonstrate the necessary qualifications to testify as an expert witness. Citing *Glover v. Ballhagen* (1988), 232 Mont. 427, 756 P.2d 1166, the District Court made a conclusive determination that Dr. Van Orden could not testify as to the standard of care of a board-certified anesthesiologist. In *Glover*, 232 Mont. at 430, 756 P.2d at 1168, we held that pursuant to Rule 702, M.R.Evid., an expert witness must be qualified by knowledge, skill, experience, training or education to testify as to the appropriate standard of care.

¶ The District Court also determined that Dr. Van Orden was not prepared to testify in the area of pain management. Dr. Van Orden's deposition statements were limited to an assessment that Dr. D.G.H.'s planning and record keeping were poor and were indicative of Dr. D.G.H.'s poor medical skills. While Dr. Van Orden opined that Dr. D.G.H. should have done a better job of learning LaRell Seal's addictive past and should have planned and monitored LaRell accordingly, he admitted that he could not testify as to whether the drugs Dr. D.G.H. prescribed to LaRell were excessive given LaRell's condition. Thus, the District Court did not allow Dr. Van Orden to testify.

¶ The determination of the qualification of a skilled or expert witness is a matter largely within the discretion of the trial judge in the absence of a showing of abuse. *See O'Leyar v. Callender* (1992), 255 Mont. 277, 281, 843 P.2d 304, 306. Since we discern no such abuse here, we do not disturb the court's discretion.

¶ Seal next contends that even in the absence of Dr. Van Orden's testimony, the District Court should not have granted summary judgment. On appeal of a summary judgment, we review Seal's contention *de novo*. *See, e.g., Stutzman v. Safeco Ins. Co.* (1997), 284 Mont. 372, 376, 945 P.2d 32, 34 (citing *Treichel v. State Farm Mut. Auto. Ins. Co.* (1997), 280 Mont. 443, 446, 930 P.2d 661, 663).

¶ Seal attempts to distinguish the cases cited by the District Court in support of its summary judgment, *Estate of Nielsen v. Pardis* (1994), 265 Mont. 470, 878 P.2d 234, *Hunter v. Missoula Community Hosp.* (1988), 230 Mont. 300, 750 P.2d 106, and *Montana Deaconess Hosp. v. Gratton* (1976), 169 Mont. 185, 545 P.2d 670, on the basis that the type of expert testimony sought in these cases was not like the type of expert testimony at issue here. However, all these cases stand for the general proposition that when there is no genuine issue of material fact because plaintiff has

failed to produce a medical expert competent to establish the applicable standard of care and a departure from that standard, summary judgment is appropriate.

¶ Seal asserts that a medical expert is not necessary to establish the applicable standard of care because other evidence is available to establish Dr. D.G.H.'s negligence. In addition, he argues that it is not necessary to establish a standard of care to prove negligence because this is not a medical malpractice case. He claims that negligence can be established by Dr. D.G.H.'s failure to produce any records of blood tests or physical examinations to show he monitored the level of and efficacy of the drugs he prescribed to LaRell. Seal also contends that a note Dr. D.G.H. wrote stating that LaRell "reports he is working a lot, continuing not to lift, and that he is not quite as bright and energetic as has been in the recent past," indicates that the medication Dr. D.G.H. prescribed to LaRell was having an adverse effect on him. Finally, Seal believes that the instrumentality that caused LaRell's death, the massive doses of narcotics, were exclusively in the control of Dr. D.G.H.

¶ Because we are not persuaded that the evidence Seal provides can prove Dr. D.G.H.'s negligence in the absence of establishing a standard of care, we conclude that the District Court did not err when it granted Dr. D.G.H. summary judgment.

## ISSUE 3

¶ Did the District Court err when it granted summary judgment to Dr. D.G.H. based on a fact deemed admitted by operation of Rule 36(a), M.R.Civ.P.?

¶ Based on our resolution of Issues 1 and 2, which results in upholding the District Court's summary judgment, we do not consider Issue 3.

## ISSUE 4

¶ Did the District Court erroneously consider other discovery abuses?

¶ Seal's final argument is that the District Court's decision to grant summary judgment was tainted by other allegations that he failed to comply with the discovery process, which he claims opposing counsel emphasized during the summary judgment hearing. Seal believes the District Court's grant of summary judgment was an exceptionally harsh sanction against him due to the effect of these allegations, as

was prohibiting Dr. Cocozzo from testifying.

¶ In this instance, Seal fails to substantiate his argument. Although the District Court mentioned in its summary judgment order that Seal committed discovery abuses other than those discussed earlier in this opinion, the court did not elaborate on these abuses, nor did it reference them as a basis for its actions. Instead, the District Court based its summary judgment on Seal's inability to produce an expert medical witness to establish an applicable standard of care, and his failure to respond to a request for admission. In addition, the District Court had sufficient reason to prohibit Dr. Cocozzo's testimony based on Seal's own failure to adequately disclose Dr. Cocozzo's proposed testimony.

¶ Thus, we affirm the decision of the District Court

/S/ J. A. TURNAGE

We concur:

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

.