

DA 08-0460

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 254

BRIANNA WHITE,

       Plaintiff and Appellant,

  v.

LINDA JOHNSON, M.D.,

       Defendant and Appellee.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DV 07-430
Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

          James M. Ragain, John R. Christensen, Ben T. Sather, Ragain Christensen
          Fulton & Filz, PLLC, Billings, Montana

       For Appellee:

          Herbert I. Pierce, III, Christopher Stoneback, Crowley Fleck, PLLP,
          Billings, Montana

                       Submitted on Briefs: June 25, 2009

                              Decided: August 3, 2009

Filed:

          _____
                         Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Brianna White (Brianna) appeals from a jury verdict in the Thirteenth Judicial District Court finding that defendant Linda Johnson, M.D. (Dr. Johnson) was not negligent in her medical treatment of Brianna. Brianna asserts that the District Court erred when it denied her motion for judgment as a matter of law, her motion for a proposed jury instruction, her post-verdict motion for a new trial, and her request for reasonable attorney fees and costs pursuant to § 37-61-421, MCA. We conclude the District Court did not err in denying these motions and affirm the jury's verdict.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    On November 24, 1999, Brianna was brought to a medical clinic in Billings, Montana, by her mother Gina White (Gina) with complaints about a headache and overall flu symptoms. Brianna was seen by Dr. Johnson. At the time, Brianna was approximately 11 years, 8 months old and weighed 57 pounds. Gina later testified that during this visit she expressed to Dr. Johnson concerns that Brianna's growth was stagnant and that she was small for her age. Gina claims that Dr. Johnson told her that some children were late bloomers and did not explore the topic further. Dr. Johnson prescribed Imitrex for the headache and, according to Gina, told her to return in a couple of days if the symptoms persisted.

¶3    Gina and Brianna did not return to see Dr. Johnson until February 12, 2001. At that time, Brianna was complaining of pain in her jaw and upper facial area, headaches, and flu-like symptoms. By this time, Brianna was approximately 12 years and 10 months old. Gina claims that she once again inquired of Dr. Johnson about Brianna's size and

2

general lack of growth and development. Gina claims Dr. Johnson told her that if Brianna did not show signs of maturing by age 16, then her lack of development would be something to investigate. Dr. Johnson diagnosed Brianna with a sinus infection, and gave her a prescription for an antibiotic.

¶4     On November 27, 2002, Brianna visited the clinic for possible strep throat. By this time, Gina was nearly 15 years old. At this visit, Brianna and Gina saw Dr. Paul Kelker (Dr. Kelker) because Dr. Johnson was on vacation. Dr. Kelker immediately expressed concerns about Brianna's size. According to Gina, Dr. Kelker seemed "disgusted" at the fact that Brianna's lack of development had not been previously addressed and told Gina that Brianna appeared to him to be about 10 years old. Dr. Kelker began testing and evaluation which ultimately led to the discovery of a craniopharyngioma that had engulfed Brianna's pituitary gland. Within 30 days, Brianna underwent surgery in Denver, Colorado, for removal of the craniopharyngioma. After the surgery, Brianna began daily hormone therapy in order to bring her development up to normal standards.

¶5     In March 2007, Brianna filed a negligence action against Dr. Johnson. Brianna alleged that Dr. Johnson had breached the applicable standard of care in her treatment of her by failing to appreciate the signs and symptoms of her abnormally small stature, immature appearance, and general lack of growth and development and by failing to conduct the necessary follow-up and investigation of these symptoms. As a result, Brianna asserted that she suffered serious, severe and permanent injuries and damages. Dr. Johnson answered, denying she was negligent.

3

¶6 Prior to trial, the District Court issued rulings with respect to several pretrial motions and motions in limine filed by Brianna and Dr. Johnson, some of which are germane to the present appeal. First, the District Court ruled that Dr. Johnson could not argue or attempt to shift the fault or blame to Brianna or Gina for any alleged lack of diligence in pursuing a diagnosis; however, Dr. Johnson would be allowed to address and explain the standard of care. Second, the District Court prohibited Dr. Johnson from calling Dr. Kelker to testify about whether or not she violated the standard of care in her treatment of Brianna.

¶7 A jury trial was held from June 24 to June 27, 2008. The jury returned a verdict in favor of Dr. Johnson, finding that she was not negligent in her treatment of Brianna. During trial, the jury heard testimony from Brianna, Gina, Dr. Johnson, and other witnesses for the defense and plaintiff, including the videotaped deposition testimony of Richard Oken, M.D. (Dr. Oken) of California which had been taken by Brianna's counsel prior to trial.

¶8 Brianna claims that throughout the trial, Dr. Johnson's defense counsel Herbert Pierce (Pierce) repeatedly violated the District Court's rulings noted directly above. With respect to the first ruling—the prohibition on shifting blame to Gina or Brianna—Brianna argues that Pierce first violated this ruling in his opening statement, when he pointed out to the jury that Gina had only taken Brianna to Dr. Johnson for "sick" visits, but had not taken her for "well child" visits. He told the jury:

> Brianna White and her mother were one of [Dr. Johnson's] patients. And the first visit was in November of 1999. That visit and the second visit and last visit with Dr. Johnson was in February of 2001. Both of

4

those visits were sick child visits. Those appointments were made that day by Mrs. White to bring her daughter in for an urgent visit because of a specific medical problem. The first visit was for a headache, the second visit was for a sinus infection.

Now, there are other types of visits as I alluded to a little earlier. There are visits for wellness checks and chronic problems. During well child checkups is when a doctor—Mr. Ragain [Brianna's counsel] put this chart on the overhead for you—that's when a doctor takes these values and other values and puts them on a chart and tracks a child's progress and development. No pediatrician does that during a sick child visit. In fact, their own expert, alluded to by Mr. Ragain, admitted that the standard of care doesn't require that a doctor during a sick child visit even to take a patient's heighth [sic]. Nobody does that.

So the two types of visits that were made and appointments that were made by Brianna's mother were for sick child visits. The first one focused on the headache and the second one focused on a sinus infection. They were not well child visits. They could have been, but they weren't. They were not for chronic problems, long-standing problems. They could have been, but they weren't.

¶9 Brianna argues that by raising this argument, Pierce was blaming Gina for the failure to diagnose her condition in direct violation of the District Court's order. Brianna further points to several places in Pierce's opening statement where he made references to Gina and her role in the visits—including the fact that Gina herself was small in size, thus making Brianna's small size by comparison seem less abnormal—and reiterated the fact that Gina had failed to schedule any medical appointments for the "specific purpose of investigating heighth [sic] or weight or growth issues at all."

¶10 Although Brianna's counsel James Ragain (Ragain) did not object to these statements during Pierce's opening, he did bring them to the District Court's attention outside the presence of the jury immediately thereafter. Ragain asserted that Pierce was violating the District Court's pretrial ruling and shifting blame to Gina by referring to her failure to schedule follow-up appointments to check on Brianna's development. Pierce

5

argued that he was not attempting to shift blame, but was simply challenging Gina's credibility regarding her concerns about Brianna's development. Pierce asserted that Gina's failure to schedule well-child checkups was probative as to whether she was actually worried about Brianna's development at the time, and that such evidence was admissible as corroborative evidence that Gina was not overly concerned about Brianna's development. To bolster this argument, Pierce observed that in Dr. Kelker's notes of his examination with Brianna and Gina, he stated that Gina is "just beginning to get concerned" about Brianna's development. The District Court reiterated its ruling that counsel was "not going to cast blame upon the mother." However, the District Court also noted that Dr. Kelker's notes would be part of the case and their contents were probative of the issues to be determined at trial.

¶11 In spite of this ruling, Brianna's counsel asserts that Pierce went on to violate this prohibition later in trial. For instance, one aspect of Brianna's damages claim was that the delayed diagnosis of her condition had a negative impact on her social life and social development among her peers because she was not developing physically at the same rate as others of her age. When inquiring of the schedule for Brianna's post-diagnosis hormone injection regimen, Brianna asserts that Pierce implied to the jury that Brianna had to take the injections on a rigid schedule which impacted her ability to carry on a normal social life, in order to fit Gina's schedule. Furthermore, Pierce posed questions to Gina at other points in the trial about the circumstances of her concern over Brianna's development and whether she did, or did not, bring up these concerns in medical appointments or schedule any appointments to look into these concerns. Brianna also

6

argues that questions elicited during Dr. Johnson's testimony about Brianna's history of well-child check ups was done in effort to imply to the jury that Gina had failed to bring Brianna in for well-child check ups.

¶12    Another alleged instance of Pierce's violation of the District Court's rulings occurred in connection with Gina's testimony about her visit with Dr. Kelker. During direct examination, Gina testified that Dr. Kelker had seemed irritated or disgusted that nothing had previously been done in response to Brianna's small size. Pierce interpreted this as "opening the door" to testimony as to whether Dr. Kelker had ever been critical of Dr. Johnson's treatment and evaluation of Brianna. Accordingly, during direct of examination of Dr. Johnson, Pierce asked her if in Dr. Kelker's deposition he had ever expressed any criticism of her, or expressed that she had violated the standard of care. Brianna immediately objected, and the District Court responded that "as far as it goes to criticisms, you can ask the question, but no further." The following exchange then occurred:

> Q.    (By Mr. Pierce)  And, doctor [Johnson], I hand you a copy of [Dr. Kelker's] deposition.  Was that deposition taken by Mr. Ragain.
> A.    Yes, it was.
> Q.    And when was it taken?
> A.    September 17th, 2007.
> Q.    And did Dr. Kelker anywhere in the deposition say you violated the standard of care?
> THE COURT:  Rephrase your question.
> MR. RAGAIN:  No, no, no, move to strike.
> THE COURT:  Motion to strike is granted.
> MR. RAGAIN:  Let's talk.  It's a direct contravention of the Court's order, Your Honor, direct and intentional.
> THE COURT:  You can ask about criticisms.
> MR. PIERCE:  I'm sorry, I apologize.
> Q.    (By Mr. Pierce)  Did Dr. Kelker criticize you in his deposition?

7

A.     No.

¶13     At this point in the proceedings, the jury was allowed to take a break and the parties spoke with the District Court outside the presence of the jury. Ragain then moved for judgment as a matter of law with respect to liability as a sanction for Pierce's alleged violation of the District Court's rulings. The District Court heard arguments from both sides as to whether its previous rulings had been violated, but reserved ruling on the motion for judgment as a matter of law until a later time. The District Court ultimately denied the motion.

¶14     During the settling of jury instructions, Brianna proposed the following instruction:

> You are hereby instructed that you are to consider the conduct of Dr. Johnson only in this case and if you determine that Brianna sustained damages, you may not consider whether the conduct of Gina White contributed to the damages. The Court has already considered this issue and will address the issue in accordance with Montana law.

Brianna's counsel argued that the instruction should be given based on: (1) the District Court's rulings on the motion in limine; and (2) because Pierce violated the District Court's ruling on several occasions under the guise that argument or evidence concerning Gina's conduct could be presented to the jury for different reasons (i.e., challenging Gina's credibility). This instruction was refused by the District Court.

¶15     After the jury returned a defense verdict, Brianna filed a motion for a new trial. The District Court held oral argument on the motion on August 28, 2008. At the hearing, Ragain asserted that Brianna did not get a fair trial due to Pierce's repeated violations of the pretrial rulings. Ragain argued that if Pierce believed he could introduce evidence

8

concerning Dr. Kelker's opinion on whether Dr. Johnson breached the standard of care for "another purpose," then Pierce should have brought this issue to the District Court's attention ahead of time. Additionally, Ragain argued that Pierce's comments in opening statements, and his repeated attempts to imply that Gina had failed to appropriately follow up on any concerns about Brianna's development, were done to shift blame to Gina in violation of the District Court's ruling. Moreover, Ragain asserted that these violations by Pierce were intentional. Ragain also argued that the District Court erred in failing to give the proposed instruction, and that if Pierce was attempting to admit evidence ostensibly prohibited under the District Court's rulings for another purpose under M. R. Evid. 105, a curative instruction to that effect should have been given.

¶16 For his part, Pierce argued that he had not violated any of the District Court's rulings, either intentionally or otherwise. Pierce reiterated his argument that inquiries about whether Gina had taken Brianna to well-child checkups was appropriate for impeachment purposes given her testimony that she had expressed concern on these issues at her visits with Dr. Johnson, even though these concerns were not reflected in the notes from Dr. Johnson's examinations. Furthermore, Pierce argued that notes from Dr. Kelker's examination indicated that Gina was just beginning to get concerned about Brianna's development at that time. In this connection, Pierce pointed to evidence from Dr. Oken's deposition, which had been placed into evidence by Brianna at trial, wherein he discussed the difference between well-child and sick visits in some length and their significance on the standard of care issue. With regard to his questioning of Dr. Johnson on whether Dr. Kelker had criticized her treatment of Brianna, Pierce asserted that the

9

door had been opened to this inquiry when Gina testified that Dr. Kelker expressed "disgust" at the previous failure to investigate the causes of Brianna's smaller than normal size.

¶17 At the conclusion of the hearing, the District Court denied the motion from the bench. The District Court acknowledged that the issue of shifting blame to Gina had presented a difficult situation for both sides in light of the evidence and argument adduced at trial, but concluded that Pierce did not overtly blame Gina for Brianna's delayed diagnosis. On the issue of whether the District Court's order had been breached when Pierce inquired about whether Dr. Kelker had opined that Dr. Johnson breached the standard of care, the District Court stated:

> Now there was—the question, when we got down to asking it, was asked in terms of criticism and standard of care. There was an objection. It's set out in the brief, and I sustained the objection and we struck a question or something and the question was re-asked. And I think there was a subsequent objection, because it was still phrased in terms of standard of care. And that question was never answered, and it was objected to and it was stricken. And then the proper question was asked about whether Dr. Kelker was critical. And the answer was no. And we moved on. It's not exactly the way I would have planned all that to occur, but in context, it was a valid and permissible impeachment, not blame.

¶18 Finally, the District Court held that the proposed instruction was properly denied because it did not actually address the issue of blame, but only that of damages. Moreover, the District Court held that the instruction was too restrictive and, further, that the Brianna had never specifically cited to M. R. Evid. 105 as a basis for the instruction.

¶19 Brianna now appeals from these rulings. Additionally, Brianna asserts that she is entitled to reasonable attorney fees and costs pursuant to § 37-61-421, MCA, based upon

10

defense counsel's unreasonable multiplication of the proceedings in this case. Since we are affirming the District Court and the jury's verdict, we do not address Brianna's claims for attorney fees and costs. We state the issues on appeal as follows:

¶20 **Issue One:** *Did the District Court abuse its discretion in denying Brianna's motion to sanction Dr. Johnson with a finding of liability based on Pierce's alleged violations of the District Court's pretrial rulings?*

¶21 **Issue Two:** *Did the District Court abuse its discretion in denying Brianna's proposed jury instruction?*

¶22 **Issue Three:** *Did the District Court manifestly abuse its discretion in denying Brianna's post-verdict motion for a new trial?*

## STANDARD OF REVIEW

¶23 We review a district court's decision to impose or deny sanctions for an abuse of discretion. *Seal v. Woodrows Pharmacy*, 1999 MT 247, ¶ 26, 296 Mont. 197, 988 P.2d 1230; *Big Spring v. Jore*, 2005 MT 64, ¶ 37, 326 Mont. 256, 109 P.3d 219. A district court's decision to refuse a proposed jury instruction is reviewed for an abuse of discretion as well. *Howard v. St. James Community Hosp.*, 2006 MT 23, ¶ 16, 331 Mont. 60, 129 P.3d 126. An abuse of discretion occurs when the district court, in the exercise of its discretion, acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason in view of all the circumstances. *Howard*, ¶ 16.

¶24 We review a district court's decision denying a motion for a new trial to determine if the district court manifestly abused its discretion. *Bailey v. Beartooth Communications Co.*, 2004 MT 128, ¶ 10, 321 Mont. 305, 92 P.3d 1.

11

## DISCUSSION

¶25   **Issue One:** *Did the District Court abuse its discretion in denying Brianna's motion to sanction Dr. Johnson with a finding of liability based on Pierce's alleged violations of the District Court's pretrial rulings?*

¶26   As noted above, Brianna's counsel moved the District Court to impose liability on Dr. Johnson as a sanction for defense counsel Pierce's alleged violations of the District Court's pretrial rulings throughout trial. Brianna argues the District Court erred in denying this motion. Brianna notes that before trial the District Court specifically prohibited inquiry of Dr. Kelker as to whether Dr. Johnson violated the standard of care and asserts that the violation of this ruling warrants the imposition of liability on the negligence count as a sanction. Furthermore, Brianna argues that Pierce shifted blame to Gina throughout trial. *See* Opinion, ¶¶ 8-12.

¶27   In response, Pierce argues that Brianna opened the door to such inquiry regarding Dr. Kelker's opinion, by having Gina testify that Dr. Kelker was disgusted that nothing had been done in previous visits with Dr. Johnson to address Brianna's small size, and that he was consequently entitled to inquire into this matter. Pierce also argues that he did not try to shift blame to Gina in violation of the District Court's order, and that evidence and inquiry regarding any well-child visits was a necessary part of presenting Dr. Johnson's defense as it bears on the standard of care.

¶28   The decision whether to impose sanctions for an alleged violation of a district court order is reviewed for an abuse of discretion.[1] *Seal*, ¶ 26. In the first instance, we

---

[1] Before the District Court, Brianna moved for judgment as a matter of law on the issue of liability as a sanction for Pierce's alleged violation of the District Court's rulings. Judgment as a

12

conclude the District Court did not abuse its discretion in concluding Pierce did not violate the pretrial order prohibiting placing blame on Gina. Gina testified that she expressed concern over Brianna's development to Dr. Johnson during her visits. However, Dr. Johnson's notes from their visits did not reflect that Gina made such statements. Furthermore, Dr. Kelker's notes from his examination of Brianna stated that Gina was "beginning to get concerned" about Brianna's growth at the time. The deposition of Dr. Oken, which was introduced into evidence by Brianna, contained an extended discussion of the distinction between well-child and sick visits.

¶29 Under M. R. Evid. 401, evidence bearing upon the credibility of a witness is considered relevant. While relevant evidence is generally admissible, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." M. R. Evid. 403. Under M. R. Evid. 607, the credibility of a witness may be challenged by either party. Once Gina testified that she had expressed concern to Dr. Johnson about Brianna's height and development, Brianna opened the door for Pierce to challenge the credibility of this assertion so long as he did not cast blame directly on Gina. As the District Court recognized, this presented a fine line for defense counsel to walk. While Pierce was not permitted to blame Gina for the delayed diagnosis and any resulting damages, Pierce was certainly allowed to present evidence concerning the frequency and scheduling of

---

matter of law is appropriate only when there is a complete absence of any evidence which would justify submitting an issue to a jury. *Vader v. Fleetwood Enterprises, Inc.*, 2009 MT 6, ¶ 20, 348 Mont. 344, 201 P.3d 139. It is clear that Brianna's motion was in actuality not a motion for judgment as a matter of law, but was instead a motion for sanctions.

13

well-child visits in order to challenge the credibility of Gina's statements concerning the extent of her concern over Gina's development. Inquiry into these topics in an effort to present a defense was properly allowed by the District Court.

¶30 Additionally, we agree with Dr. Johnson that Pierce was properly allowed to inquire whether Dr. Kelker expressed criticisms concerning her treatment of Brianna. Clearly, Gina's testimony about Dr. Kelker's disgust over previous treatments by Dr. Johnson implied that he was critical of Dr. Johnson. Once this testimony was offered, rebuttal evidence on this point became relevant. *See e.g. Cline v. Durden*, 246 Mont. 154, 161, 803 P.2d 1077, 1081 (1990). While Pierce's direct question to Dr. Johnson about whether Dr. Kelker stated that she violated the standard of care was an arguable violation of the pretrial ruling, the question was stricken before it was answered. *See* Opinion, ¶ 12. Moreover, Brianna did not ask the District Court to admonish the jury in any respect at that time. The jury was dismissed for a recess and Pierce then explained to the District Court why he thought he was permitted to inquire into any criticisms Dr. Kelker may or may not have had concerning Dr. Johnson's treatment.

¶31 Under these circumstances, we cannot say that the District Court abused its discretion in denying Brianna's motion for imposition of liability as a sanction for defense counsel's conduct.

¶32 **Issue Two:** *Did the District Court abuse its discretion in denying Brianna's proposed jury instruction?*

¶33 Brianna also argues that the District Court erred in failing to give her proposed jury instruction, in light of Pierce's repeated attempts to cast blame upon Gina during

14

trial. *See* Opinion, ¶ 14. Brianna further argues that since Pierce claimed that evidence about well-child visits and Gina's actions in respect to scheduling them was admissible for the purpose of challenging Gina's credibility, then the jury should have been instructed accordingly pursuant to M. R. Evid. 105. This rule of evidence reads as follows:

> When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

M. R. Evid. 105.

¶34 In denying Brianna's motion for a new trial, the District Court explained the rationale for denying this jury instruction as follows:

> Let's see, the curative instruction. Now, everybody's right, that no one told me about Rule 105. And I guess as many cases I've tried, I should have that committed to memory anyway, but I didn't. It wasn't mentioned. And the curative instruction, it, I suppose, according to Plaintiff, intended to address blame or liabilities, but doesn't. It addresses damages. And it is too restrictive. It says, You are to consider the conduct of Dr. Johnson only in this case. And that's—that's too restrictive. That one was refused. No other one was ever offered. The Court was never cited to Rule 105. We'll leave that one to the Supreme Court.

¶35 Brianna argues that the District Court's denial of the jury instruction is reversible error warranting a new trial under the authority of *Lorang v. Fortis Ins. Co.*, 2008 MT 252, 345 Mont. 12, 192 P.3d 186. We disagree and conclude that the District Court's ruling in this regard was not unreasonable, and did not constitute an abuse of its discretion. As the District Court correctly noted, Brianna did not explicitly request a jury instruction based upon M. R. Evid. 105. *See Cissel v. Western Plumbing and Heating*

15

*Inc.*, 188 Mont. 149, 158, 612 P.2d 206, 211 (1980) (district court under no duty to give a limiting instruction under M. R. Evid. 105 absent a request to limit the scope of the consideration of testimony). The argument that such instruction fits within the M. R. Evid. 105 requirement was not raised until after trial. Additionally, as noted by Dr. Johnson, the jury instruction was actually proposed pretrial, thus undercutting the argument that it was introduced to cure perceived evidentiary deficiencies at trial.

¶36    Further, we agree with the District Court that the jury instruction as presented was too restrictive and was not in fact a limiting instruction pursuant to M. R. Evid. 105. Rather, the instruction as proposed sought to categorically exclude from the jury's consideration evidence and argument that legitimately challenged Gina's credibility. In this respect, the instruction was too broad. Moreover, in light of the District Court's legitimate exercise of its discretion as noted under Issue One, it is questionable whether there was any misconduct to cure. Finally, the instruction is focused upon what the jury should consider in the event it concluded that Brianna sustained damages. The jury did not reach this question. For the foregoing reasons, we conclude the District Court did not abuse its discretion in denying Brianna's proposed jury instruction.

¶37    **Issue Three:** *Did the District Court manifestly abuse its discretion in denying Brianna's post-verdict motion for a new trial?*

¶38    Finally, Brianna argues that the District Court erred in denying her motion for a new trial. The arguments in support of overturning the District Court's decision are based on a combination of defense counsel Pierce's alleged "gross misconduct" during trial, the District Court's failure to sanction Dr. Johnson with a finding of liability, and its

16

failure to give Brianna's proposed jury instruction. Brianna argues that Pierce's gross misconduct rises to the level of attorney misconduct described in *Lopez v. Josephson*, 2001 MT 133, 305 Mont. 446, 30 P.3d 326, and *Durden v. Hydro Flame Corp.*, 1998 MT 47, 288 Mont. 1, 955 P.2d 160, thus warranting a new trial. In *Lopez*, for instance, we stated that "[t]he repeated asking of questions clearly intended to keep the assumption of damaging facts which cannot be proven before the jury, in order to impress upon their minds the probability of the existence of the assumed facts upon which the questions are based, constitutes gross misconduct." *Lopez*, ¶ 35. Brianna argues that Pierce's conduct had an analogous effect, and put before the jury improper arguments and comments undermining her right to a fair trial. *See e.g. Harne v. Deadmond*, 1998 MT 22, ¶ 11, 287 Mont. 255, 954 P.2d 732 (holding that improper comments made by counsel, without proper admonishment or appropriate jury instruction, resulted in reversible error warranting a new trial).

¶39 In denying Brianna's motion for a new trial, the District Court stated:

> In essence, bottom line is this is a small parent with a small child on a sick child visit, no violation of the standard of care medically. Plaintiff got in all of its evidence and arguments. Plaintiff didn't violate the Court's rules, nor did the Defendant. The fact is the evidence shows there's no one to blame or at fault for the diagnosis not occurring earlier. No standard of care, medical or parental, was violated.
> In fact, I think, if on that third visit Dr. Johnson had been there and they had gone to see Dr. Johnson, she would have discovered the same things and made the same conclusions that Dr. Kelker did at that point in time. All in all, it was a proper trial. It was a fair trial. Neither party was prevented from having a fair trial.

¶40 Pursuant to § 25-11-102(1), MCA, a verdict or decision may be vacated and a new trial granted when an "irregularity in the proceedings of the court, jury, or adverse party

17

or any order of the court or abuse of discretion" prevents a party from having a fair trial, thereby materially affecting that party's substantial rights. *See Willing v. Quebedeaux*, 2009 MT 102, ¶ 22, 350 Mont. 119, 204 P.3d 1248. "The trial court has an overriding duty to prevent a miscarriage of justice by granting a new trial where the misconduct of counsel prevents the opposing litigant from having a fair trial on the merits." *Lopez*, ¶ 35 (citing *Durden*, ¶ 36).

¶41 In light of the foregoing rulings, we conclude that Brianna's right to a fair trial was not materially affected by any claimed irregularities in these proceedings, and that the District Court did not manifestly abuse its discretion in denying the motion for a new trial.

## CONCLUSION

¶42 The District Court did not abuse its discretion in denying Brianna's motion for sanctions, or her proposed jury instruction. Furthermore, the District Court did not manifestly abuse its discretion in denying Brianna's motion for a new trial. Thus, we affirm the jury's verdict.

/S/ PATRICIA O. COTTER

We concur:

/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ BRIAN MORRIS
/S/ JIM RICE

18